KEVIN W. ROBERTS
CHAD FREEBOURN
ROBERTS | FREEBOURN, PLLC
313 W. Riverside Ave.
Spokane, WA 92201
Telephone: (509) 381-5262
Facsimile: (509) 473-9026
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTIAN COX, a married man; PACIFIC COAST FIBER FUELS, LLC, a Washington limited liability company; and JOSEPH A. MAYO IV, a married man, | Case No.: 2:16-cv-00362-SAB |
| Plaintiff, | |
| vs. | **PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS' COUNSEL** |
| ALLIANT INSURANCE SERVICES, INC., d/b/a MOLONEY + O'NEILL, a Delaware corporation; DAN ROMAIN and JANE DOE ROMAIN, a marital community; FARMIN ROTHROCK & PARROTT, INC., a Washington corporation; and KELLY EGAN and JANE DOE EGAN, a marital community, | **Date: December 15, 2016** |
| | **Time: 1:30pm** |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

## I.    MOTION

Plaintiffs Christian Cox, Pacific Coast Fiber Fuels, LLC, and Joseph A. Mayo

IV, by and through their attorneys of record, ROBERTS | FREEBOURN, PLLC,

move this Court for an order disqualifying Defendants' lawyers, Roberts A. Dunn, Alexandria T. Drake, Richard Wetmore, and the law firm of Dunn & Black, P.S. and directing that each be immediately withdrawn from this case. This motion is based upon RPC 1.7, RPC 1.9, RPC 1.10, RPC 1.16, the declaration of Kevin W. Roberts, the Declaration of Christian R. Cox, the Declaration of Joseph A. Mayo IV, and the discussion below.

## II.  RELEVANT FACTS

### A. DUNN & BLACK, P.S. (FORMERLY KNOWN AS DUNN, BLACK, AND ROBERTS, P.S.)

1.     Kevin Roberts worked as an attorney associated with the firm now known as Dunn & Black, PS from 1999 until October, 2015. **Dec. of Roberts, ¶2.** At the time he decided to leave the firm and start his own firm, Roberts was a named shareholder in Dunn, Black & Roberts, P.S. **Dec. of Roberts, ¶2.**

2.     The lawyers of the law firm of Dunn & Black, P.S. and specifically Robert A. Dunn, Kevin Roberts, and Alexandria T. Drake have represented Christian Cox, Pacific Coast Fiber Fuels, and Joseph Mayo. **Dec. of Roberts ¶3.** Mr. Mayo and his companies were clients of Dunn & Black, PS for more than a decade, and Pacific Coast Fiber Fuels still considers itself a client of Dunn and Black. **Dec. of Mayo.** The representation of the Plaintiffs by Dunn & Black, P.S. and the confidential information it received from Plaintiffs is substantially related to this matter. **Dec. of Mayo; Dec. of Cox; and Dec. of Roberts.**

**3.** Dunn & Black, P.S. was and is a small firm. The attorneys in the firm constantly discuss among themselves on-going cases, clients, and work being performed. In addition, the office is designed with open workstations for paralegals assigned to multiple attorneys. The workstations contain a counter on which paralegals and attorneys often leave confidential client information and work product. During the time Kevin Roberts was an attorney at the firm, it was common for attorneys Alexandria Drake and Richard Wetmore to read information, work product, and confidential client communications even on matters that they were not assigned to work on. This included reviewing and discussing issues relating to the representation of Christian Cox, Pacific Coast Fiber Fuels, and Joseph Mayo. **Dec. of Roberts, ¶4.**

**4.** During the time Kevin Roberts was an attorney at Dunn & Black, PS (formerly known as Dunn, Black & Roberts, PS), he and Robert A. Dunn had a close working and social relationship. As it related to employment cases or clients, Kevin Roberts and Robert A. Dunn would discuss on almost a daily basis client issues, confidential client information and work together to brainstorm ideas for approaching those issues. This was especially true of work and confidences that Kevin Roberts, Roberts A. Dunn and others in the firm performed on behalf of Christian Cox, Pacific Coast Fiber Fuels and Joseph Mayo. **Dec. of Roberts, ¶5.**

**B. CHRIS COX**

5. Chris Cox is a licensed attorney who worked for Dunn & Black, PS from 2003 – 2006. In 2006, Christian Cox left Dunn & Black and went to work for Moloney, O'Neill, Corkery & Jones, Inc. as an insurance agent. **Dec. of Cox, ¶9.**

6. Moloney, O'Neill, Corkery & Jones, Inc. ("MOCJ") is a Washington corporation that was formed on September 11, 1967.

7. Plaintiff Christian Cox was an employee and Shareholder of Moloney, O'Neill, Corkery & Jones, Inc. ("MOCJ") prior to September 1, 2014. **Dec. of Cox, ¶3.**

8. MOCJ and Alliant Insurance Services, Inc. ("Alliant") entered into negotiations in 2013 in which Alliant negotiated to purchase certain assets of MOCJ.

9. During the adversarial negotiations between Alliant and MOCJ, Alliant, through their own Counsel, drafted a proposed employment agreement that would be an Exhibit to the parties Purchase and Sale Agreement. In addition to purchasing some of the assets, Alliant had agreed to hire certain employees of MOCJ. The negotiations between MOCJ and Alliant included negotiating the terms of the Exhibits to be attached to the sale documents. Neither Dunn & Black or any of its attorneys drafted the proposed employment agreement for Alliant or represented Alliant in any way. Instead, Dunn & Black and its attorneys represented

MOCJ and Christian Cox as adversaries to Alliant in the negotiation. **Dec. of Cox, ¶4; Dec of Roberts, ¶7.**

10.     In his position with MOCJ, Christian Cox was provided a copy of the proposed Employment Agreement that he would be required to sign if he decided to accept employment with Alliant.   The Proposed Employment Agreement contained numerous terms and conditions, including restrictive covenants.  Section 12(g) of the Employment Agreement contains the following provision:

> ***Executive acknowledges that he has had an opportunity to review and revise the Agreement and have it reviewed by legal counsel, if desired, and, therefore the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.***

**ECF Doc. 13-2, p. 23**

11.     To protect his own interests and in light of Alliant's statement that he should seek independent counsel, Cox engaged Kevin Roberts, an attorney and principal at the law firm of Dunn & Black, in approximately July/August 2014 to review the proposed Alliant Employment Agreement on his behalf and to provide him with legal advice relating to it.  **Dec. of Cox, ¶4.**  Roberts agreed to review the Employment Agreement that was proposed by Alliant and to provide legal advice to Cox as an individual.     Based on their longstanding business and social relationship, Roberts indicated that he was not going to charge Cox for reviewing the employment agreement and providing advice. *See* **Dec. of Roberts.**

12. The Alliant Employment Agreement was drafted by Alliant, and Cox wanted an attorney to review the Employment Agreement on his behalf to ensure that his interests were represented as well. Roberts and Dunn & Black agreed to review the proposed Employment Agreement for Cox and provided recommendations, including recommendations on the restrictive covenants in the Agreement. **Dec. of Cox, ¶5; Dec. of Roberts, ¶7.**

13. After reviewing the Employment Agreement for Cox, Roberts discussed the proposed Employment Agreement with attorney Robert A. Dunn of Dunn & Black, and Roberts' recommendations to Cox were based in part on his discussions with Dunn. **Dec. of Roberts, ¶6.**

14. After discussing the proposed Employment Agreement with Roberts, including Roberts' concerns with the restrictive covenants therein, Cox signed the proposed Alliant Employment Agreement on or about September 1, 2014. **Dec. of Cox, ¶6.**

15. The proposed Alliant Employment Agreement that Roberts and Dunn & Black reviewed for Cox is the subject of this litigation in that Cox alleges Alliant breached that Employment Agreement. **Dec. of Cox, ¶7.**

16. Cox believes that there is a conflict of interest and does not consent to Dunn & Black's representation of Defendants in this action and requested that Dunn & Black withdrawal. To date, no response was provided by Dunn & Black.

## C. PACIFIC COAST FIBER FUELS / JOSEPH MAYO IV

17.     Plaintiff Joseph A. Mayo IV ("Mayo") is the majority owner of Plaintiff Pacific Coast Fiber Fuels, LLC ("Pacific Coast Fiber"). **Dec. of Mayo.** He is also a long-time client of Robert Dunn and the law firm of Dunn & Black, PS. Id. Over the last decade, Robert Dunn and the law firm of Dunn & Black, PS have represented Mayo and companies owed by him on every facet of his operations. **Dec. of Mayo.**

18.     When Joe Mayo started Pacific Coast Fiber, he hired the law firm of Dunn & Black to be its corporate counsel. **Dec. of Mayo.**

**19.**     Pacific Coast Fiber and Mayo worked closely with Dunn & Black and disclosed private and confidential information to Dunn & Black. **Dec. of Mayo.** Mayo specifically discussed and disclosed confidential information that substantially related to this action, including confidential information that relates to damages in this case. **Dec. of Mayo; Dec. of Roberts.**

20.     Pacific Coast Fiber never received notice from Dunn & Black that it was terminating its representation of Pacific Coast Fiber, and Pacific Coast Fiber considers Dunn & Black to be its attorneys on an ongoing basis. **Dec. of Mayo.**

21.     Mayo also hired Dunn & Black to represent him and his wife in a personal injury lawsuit against Mutual of Enumclaw in September, 2013.  That

litigation is ongoing, and Dunn & Black, including both Alex Drake and Robert Dunn represented the Mayos through April 2016 in that litigation. **Dec. of Mayo.**

22.     In that litigation, The Mayos disclosed private and confidential information to Dunn & Black, including extensive medical records, tax returns, and other sensitive information during the course of the litigation against Mutual of Enumclaw. **Dec. of Mayo.** The confidential information that was provided to Dunn & Black includes information not only in these confidential documents, but also information relating to Mayo's financial practices which could be used against him in this litigation by his current/former lawyers. **Dec. of Mayo.**

23.     Mayo is the majority owner of HCOW Consulting, LLC ("HCOW"). HCOW hired Dunn & Black to represent it in a class action litigation and paid Dunn & Black over $280,000 in legal fees. HCOW and Mayo worked closely with Dunn & Black in this litigation and disclosed private and confidential information to Dunn & Black, P.S. **Dec. of Mayo.**

24.     In addition to Pacific Coast Fiber Fuels, Mayo's other businesses using Dunn & Black as their legal counsel include, Inland Fleet Services, Mayken Spokane, and Mayken Investments. Each of these also disclosed private and confidential information to Dunn & Black, including information about how Mayo operates the businesses and who he used for services. Mayo still considers Dunn &

Black to be his attorneys and part of his legal team for Pacific Coast Fiber and other companies. **Dec. of Mayo.**

25.    Because Mayo considers Robert Dunn and Dunn & Black to be members of his legal team, Mayo continues to speak with Dunn confidentially about his businesses, how those businesses operate, and his strategy in dealing with others. All of the confidential information that Robert Dunn and his firm has obtained relative to Mayo and his businesses over the past decade will relate to the claims being brought in this action since they relate to the interference suffered, how Mayo handles litigation and his damages.  It would be prejudicial if Dunn & Black were allowed to use Mayo's confidences in a proceeding adverse to him. **Dec. of Mayo.**

26.    Robert A. Dunn, a principal of Dunn & Black, lives in the house next to Mayo.  Mr. Dunn and Mayo occasionally meet at their respective houses.  Dunn and Mayo have a social relationship and are friends.  Because Mayo considers Mr. Dunn and Dunn & Black to be his attorneys personally and for his business ventures, he routinely discusses confidential, privileged, and strategic information with Mr. Dunn during these visits with the expectation that this information is privileged.  Although some of these conversations may have occurred in a social setting, Mayo nonetheless believed they were privileged because of their longstanding legal relationship.  These confidential disclosures have been far reaching and the type of information Mayo disclosed about his operations and

practices will be directly at issue in this action since it involves market manipulation by the Defendants, tortious interference in his business relationships, CPA claims and the damages resulting from each. Because of their relationship, Robert Dunn has intimate knowledge on how Mayo thinks and how he deals with these types of disputes. That information has been provided in confidence because of their legal relationship. **Dec. of Mayo.**

27.    Mayo was not asked by Dunn & Black for his consent allowing them to represent Defendants adverse to him and does not provide that consent.  Mayo asks that the Court not allow lawyers that he has provided information to in complete confidentiality to now represent Companies and Individuals adverse to him where his confidences could be used against him and his company.   The representation by Dunn & Black relative to Mayo and his companies has been broad and far reaching. The information Robert Dunn and Dunn & Black have substantially relates to issues that will arise in this matter and should not be allowed.

## III.    DISCUSSION

The District Court is authorized to determine whether an attorney's representation of a party presents a conflict of interest.  <u>Gas–A–Tron of Arizona v. Union Oil Co. of California</u>, 534 F.2d 1322, 1324 (9th Cir.1976) (per curiam) (citing <u>Richardson v. Hamilton Int'l Corp.</u>, 469 F.2d 1382 (3rd Cir.1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973)), *cert. denied,* 429 U.S.

861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). The Court refers to the local rules regulating the conduct of members of its bar to determine if a conflict exists. Oxford Systems, Inc. v. Cellpro, Inc., 45 F.Supp.2d 1055, 1059 (W.D. WA 1999), *citing* United States ex rel. Lord Elec. Co., Inc. v. Titan Pacific Const. Corp., 637 F.Supp. 1556, 1560 (W.D.Wash.1986).

Washington Rules of Professional Conduct (RPC) 1.7, provides that a lawyer cannot represent a client with interests directly adverse to the interests of another client. A lawyer is also precluded from representing another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client. RPC 1.9. An attorney is required to withdraw from representing a client when representation violates the Rules of Professional Conduct. RPC 1.16(1)(a).

As set forth above, Dunn & Black represented Cox in adversarial negotiations with Defendant Alliant in relation to the Alliant Employment Agreement that is the subject of this litigation. Dunn & Black also represented Plaintiff Joseph Mayo IV through April 2016 and obtained confidential information from Mayo that substantially relates to this action. Finally, Dunn & Black has represented and currently represents Pacific Coast Fiber and Mayo, and RPC 1.7 precludes Dunn & Black from representing Defendants against them in this action.

**A. Dunn & Black is Barred From Representing Defendants Against Its Former Client Plaintiff Christian Cox**

Rules of Professional Conduct 1.9 governs conflicts of interest and states in pertinent part as follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client....

"*The essence of the attorney/client relationship is whether the attorney's advice or assistance is sought and received on legal matters.*" Bohn v. Cody, 119 Wn.2d 357, 363, 832 P.2d 71 (1992). An attorney-client relationship does not need to be formalized in a written agreement, but rather can be implied from the parties' conduct. Id., *citing* In re McGlothlen, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983). An attorney-client relationship can exist whether or not fees are paid. McGlothlen, 99 Wn.2d at 522, 663 P.2d 1330. The existence of an attorney-client relationship "*turns largely on the client's subjective belief that it exists.*" Oxford Systems, 45 F.Supp.2d at 1059, *citing* Bohn v. Cody, 119 Wn.2d 357, 363, 832 P.2d 71 (1992) (quoting In re McGlothlen, 99 Wash.2d 515, 522, 663 P.2d 1330 (1983))(emphasis added).

Dunn & Black represented Plaintiff Christian Cox in 2014 by reviewing and providing counsel to Cox on the proposed Alliant Employment Agreement that is the subject of this litigation. **Dec. of Cox; Dec. of Roberts, ¶7.** Kevin Roberts,

who was at that time a Principal and Shareholder of Dunn & Black, reviewed the Alliant Employment Agreement, discussed Cox's employment agreement with Robert Dunn, and provided specific counsel to Cox on the restrictive covenants in that Employment Agreement. **Dec. of Roberts, ¶7.** Cox believed that Dunn & Black were his attorneys and disclosed confidential information to them. **Dec. of Cox.**

This action includes allegations that Alliant breached the Employment Agreement reviewed by Dunn & Black on behalf of Cox, and thus Dunn & Black is representing Defendants "*in the same or substantially related matter*" in which Defendants' interests are materially adverse to Cox, it's former client. *See* RPC 1.9. Defendants admit that the Alliant Employment Agreement is "*absolutely central to the entire litigation....*" ECF 11, p. 3. Thus, Dunn & Black should never have taken this representation. RPC 1.16(1)(a). Since they refused to withdraw, the Court should disqualify Dunn & Black from representing Defendants in this action.

### B. DUNN & BLACK IS BARRED FROM REPRESENTING DEFENDANTS AGAINST ITS CLIENTS, PLAINTIFF PACIFIC COAST FIBER AND MAYO.

### 1. Pacific Coast Fiber and Mayo are Dunn & Black's Current Client

A lawyer cannot represent a client with interests directly adverse to the interests of another client unless each client consents in writing after full disclosure. RPC 1.7. Whether a party is a current client may be inferred from the parties'

conduct. <u>Oxford Systems, Inc. v. Cellpro, Inc.</u>, 45 F.Supp.2d 1055, 1059 (W.D. WA 1999), *citing* <u>Teja v. Saran</u>, 68 Wn. App. 793, 795, 846 P.2d 1375 (1993), *review denied*, 122 Wn.2d 1008, 859 P.2d 604 (1993). The existence of an attorney-client relationship "turns largely on the client's subjective belief that it exists." <u>Oxford Systems</u>, 45 F.Supp.2d at 1059, *citing* <u>Bohn v. Cody</u>, 119 Wn.2d 357, 363, 832 P.2d 71 (1992) (quoting <u>In re McGlothlen</u>, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983)). A party's subjective belief that an attorney-client relationship exists controls the issue when that belief is reasonably formed based on the attending circumstances, including the attorney's words or actions. <u>Oxford Systems</u>, 45 F.Supp.2d at 1059.

Plaintiffs Pacific Coast Fiber and Mayo reasonably believe that they are current clients of Dunn & Black. Dunn & Black has represented Mayo and his companies on a variety of issues for at least ten years until this action was filed. **Dec. of Mayo.** During that time, Mayo and his Companies have paid Dunn & Black substantial sums in attorney fees and costs. **Dec. of Mayo.** Dunn & Black also represented Mayo and his wife personally in litigation through April 2016. **Dec. of Mayo.** Dunn & Black represented four other businesses controlled by Mayo. **Dec. of Mayo.** Mayo and Dunn meet at their respective houses to discuss strategic, confidential, and privileged information, and Mayo assumed that these discussions were privileged and confidential since he believes Robert Dunn and Dunn & Black

are his attorneys. **Dec. of Mayo.** Based on these facts, Pacific Coast Fiber and Mayo have a reasonable belief that they are current clients of Dunn & Black. Therefore, Dunn & Black cannot represent Defendants against Pacific Coast Fiber and Mayo in this action. *See* RPF 1.7.

**2. Pacific Coast Fiber and Mayo are also Dunn & Black's Former Clients.**

RPC 1.9 precludes a lawyer from representing a former client "in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client…." Matters are "substantially related" if there is a substantial risk that confidential factual information gained in the prior representation can be used against the former client in the subsequent matter. *See* Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980).

Mayo and his companies have worked extensively with Dunn & Black over ten years and disclosed confidential information to Dunn & Black with the expectation that the information would be privileged and confidential. **Dec. of Mayo.** This confidential information includes income statements, tax returns, medical history and information, business relationships, business strategy, and other strategic information that can be used against them in the current action. **Dec. of Mayo.** Dunn & Black is therefore violating RPC 1.9 by representing Defendants against Pacific Coast Fiber and Mayo in this action and should be disqualified. *See* RPC 1.9.

# IV.  CONCLUSION

Based on the foregoing facts, laws, and precedents, Plaintiffs request the Court to grant their Motion to Disqualify Robert Dunn, Richard Wetmore, Alexandria Drake, and Dunn & Black, P.S. from representing Defendants in this action.

There will be no prejudice to the Defendants since they are also represented by three other lawyers in this matter.

DATED this 15th day of November, 2016.

ROBERTS | FREEBOURN, PLLC

/s/ KEVIN W. ROBERTS
KEVIN W. ROBERTS
Kevin W. Roberts, WSBA #29473
Chad Freebourn, WSBA #35624
Attorneys for Plaintiff
313 W. Riverside Ave.
Spokane, WA 99201
Telephone:  (509) 381-5262
Fax:            (509) 473-9026
Email:        kevin@robertsfreebourn.com
                  chad@robertsfreebourn.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of November, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send notification of such filings to the following:

Robert A. Dunn
bdunn@dunnandblack.com

Richard Wetmore
rwetmore@dunnandblack.com

Alexandria T. Drake
adrake@dunnandblack.com

Scott A. Meyers
Scott.meyers@akerman.com

Kasey F. Dunlap
Kasey.dunlap@akerman.com

Julian Dayal
Julian.dayal@akerman

ROBERTS | FREEBOURN, PLLC

/s/ KEVIN W. ROBERTS
Chad Freebourn, WSBA #35624
Kevin W. Roberts, WSBA #29473
Attorneys for Plaintiff
313 W. Riverside Ave.
Spokane, WA 99201
Telephone: (509) 381-5262
Fax:         (509) 473-9026
Email:      kevin@robertsfreebourn.com
               chad@robertsfreebourn.com