KEVIN W. ROBERTS
CHAD FREEBOURN
ROBERTS | FREEBOURN, PLLC
313 W. Riverside Ave.
Spokane, WA 99201
Telephone: (509) 381-5262
Facsimile: (509) 473-9026
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTIAN COX, a married man, and PACIFIC COAST FIBER FUELS, LLC, a Washington limited liability company, and JOSEPH A. MAYO IV, a married man,<br><br>Plaintiff,<br><br>vs.<br><br>ALLIANT INSURANCE SERVICES, INC., d/b/a MOLONEY + O'NEILL, a Delaware corporation; DAN ROMAIN and JANE DOE ROMAIN, a marital community; FARMIN ROTHROCK & PARROTT, INC., a Washington corporation; and KELLY EGAN and JANE DOE EGAN, a marital community,<br><br>Defendants. | Case No.: 2:16-cv-00362-SAB<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY** |

## I. INTRODUCTION

The Motion to Disqualify brought by Alliant's local counsel, Dunn & Black, was filed as a litigation tactic intended to act as a smoke screen for their

PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO
DISQUALIFY- 1

own blatant violation of the Rules of Professional Conduct. A review of the actual facts and law implicated by their motion confirms that there is no conflict in this case and the motion was brought in bad faith as a litigation tactic.

Local Counsel's motion is based on a blatant misrepresentation claiming that Roberts drafted the Alliant Employment Agreement, and its argument ignores the fact that any representation by Roberts on behalf of Moloney, O'Neill, Corkery & Jones, Inc. and Chris Cox in 2014 was adverse to Alliant who is not a former client of Roberts. The particular facts and circumstances in this matter establish that this motion was not brought in good faith, and the *"practical consequences"* are such that Alliant is not a former client of Roberts and Roberts has no confidential information of Alliant. Consequently, the Motion should be denied and Cox should be awarded the attorney fees and costs incurred as a result of responding to and arguing this motion.

## II. STATEMENT OF FACTS

1. Moloney, O'Neill, Corkery & Jones, Inc. ("MOCJ") is a Washington corporation that was formed on September 11, 1967. **Dec. of Cox, ¶2 and Ex. A.**

2. In 2013, MOCJ and Alliant Insurance Services, Inc. ("Alliant") entered into negotiations for Alliant to purchase some of the assets of MOCJ. The negotiations between MOCJ and Alliant were adversarial. MOCJ and Alliant each retained several attorneys to represent them in the negotiations and in

drafting the documents for the transaction. **Dec. of Cox, ¶3.** Dunn, Black & Roberts, PS did not represent Alliant in these adversarial negotiations and did not represent Alliant at any point prior to Roberts terminating his relationship with Dunn, Black & Roberts, PSC. **Dec. of Roberts, ¶2.**

    3.    Prior to the sale of assets to Alliant and as part of the adversarial negotiations, Cox contacted attorney Kevin Roberts and Dunn & Black on or about May 28, 2014 to draft a Separation Agreements for MOCJ shareholders who at that time had indicated they intended to retire when the assets were sold to Alliant (Gorman and O'Neill) and a general release. Cox also asked Roberts and Dunn & Black to determine MOCJ's potential liability for wrongful termination of MOCJ employees that Alliant did not hire if an agreement on the asset sale happened. **Dec. of Cox, ¶4.** This was because Alliant had indicated that MOCJ would be responsible for any such claims since this was not the purchase of a business but instead was an asset purchase. **ECF 13-1, p. 10, ¶vi.**

    4.    Cox's attorney/client communications with Roberts and Dunn & Black on these matters were privileged, occurred months prior to the Alliant asset sale, and were strictly for the benefit of MOCJ. MOCJ, not Alliant, paid Dunn & Black's attorneys fees. **Dec. of Cox, ¶5** The separation agreements and advice on MOCJ's potential liability for terminating employees when the assets were sold do not relate in any way to the dispute at bar between Cox, Alliant, or any of the

TO DEFENDANTS' MOTION TO
DISQUALIFY- 3

other Defendants in this case. Roberts never communicated with anyone at MOCJ other than Cox during his brief representation. **Dec. of Cox, ¶5; Dec. of Roberts, ¶8.**

    5.    During the adversarial negotiations between Alliant and MOCJ, Alliant provided drafts of the sale documents to MOCJ. These documents were drafted by Alliant and/or its lawyers. **Dec of Cox, ¶6.** These documents included drafts of agreements that would be exhibits to the Asset Sale Agreement. One of the documents drafted by Alliant and its lawyers was a sample Employment Agreement that all MOCJ shareholders would be required to sign if they wanted to be employed by Alliant. Neither Kevin Roberts nor anyone at Dunn, Black & Roberts, PS had anything to do with drafting the Employment Agreement being proposed. Alliant had its own lawyers representing it in the Asset Purchase and presumably they drafted the Alliant Employment Agreement. Both the proposed Employment Agreement and Asset Purchase Agreements included provisions stating that shareholders had the opportunity to have the documents reviewed by independent counsel. **Dec. of Cox, ¶6 Dec. of Roberts, ¶4.**

    6.    In July or early August, 2014, Cox asked Kevin Roberts and Dunn & Black if he would review the proposed Alliant Employment Agreement on behalf of Cox personally to provide input on it. The Alliant Employment Agreement was drafted by Alliant's attorneys, and Cox wanted an attorney to review the

PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO
DISQUALIFY- 4

Employment Agreement on behalf of Cox individually to determine if he should try to negotiate portions of it. **Dec. of Cox, ¶7.** This review was prior to the Asset Sale being finalized and was adversarial to Alliant. In addition, it was on behalf of Cox individually and for his sole benefit. **Dec. of Cox, ¶7.**

7. Cox and Roberts had been long-time friends and referral sources. **ECF 27, p. 3, ¶6.** As a result, Roberts agreed to provide the legal advice without charging Cox for the advice. Id. Ultimately, it was Cox's understanding that Alliant would not negotiate on the terms of the Employment Agreement it was proposing as a part of the Asset Sale, and the Alliant Employment Agreement signed by Cox did not contain any changes discussed between Cox and Roberts. **Dec. of Cox, ¶8.**

8. Neither Roberts nor Dunn, Black & Roberts, PS represented Alliant in any of the the above discussed matters. Their sole role was to represent MOCJ and Cox on limited issues arising out of MOCJ's and Cox's adversarial negotiations with Alliant. **Dec. of Cox, ¶9; Dec. of Roberts, ¶5.**

9. Cox had a written Employment Agreement with MOCJ. His employment was terminated by MOCJ on or about August 30, 2014 pursuant to that Agreement. Cox executed an Alliant Employment Agreement effective August 31, 2014. Roberts did not draft or assist with drafting either of these Employment Agreements. **Dec. of Cox, ¶10; Dec. of Roberts, ¶6.**

PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO
DISQUALIFY- 5

10. The purchase by Alliant of some of the assets of MOCJ was completed on August 31, 2014. However, the entity MOCJ continued to exist and function as an independent, separate corporation in no way related to Alliant. **Dec. of Cox, ¶11.** Because one of the assets sold was the name, the entity, MOCJ, changed its name to JCOM, Inc. ("JCOM") in September, 2014. **Dec. of Cox, ¶11.**

11. JCOM maintained the same UBI number as MOCJ. JCOM continued to maintain independent bank accounts, assets, and insurance wholly independent of Alliant. **Dec. of Cox, ¶12.**

12. JCOM currently has a President (Dan Romain), a Vice-President/Treasurer/Director (Jeffrey O'Neill), a Vice-President/Director (Mark Roff), and a Secretary (Christian Cox). JCOM also had a Board of Directors and four "Chairman/Directors." **Dec. of Cox, ¶14** and **Exhibit A**.

13. JCOM continued to operate as an entity and issued payments to MOCJ shareholders in 2015. JCOM issued a K-1 Statement to Cox in September 2016 showing that he received income from JCOM in 2015. **Dec. of Cox, ¶15.** JCOM remained an active Washington corporation until December 24, 2015, and although now inactive, it still has assets and liabilities. **Dec. of Cox, ¶15.**

14. Cox was a Shareholder, Board of Directors member, Corporate Secretary, and General Counsel of MOCJ. **Dec. of Cox, ¶16.** Cox was also a

member of the Executive Committee of MOCJ's Board of Directors. The Executive Committee consisted of five members of the Board of Directors and MOCJ President Dan Romain. This Executive Committee met weekly and managed the operations of MOCJ. MOCJ's Board of Directors was authorized to make all decisions for MOCJ. **Dec. of Cox, ¶16.**

15. The operations of Alliant's Spokane branch differ significantly from MOCJ's operations prior to the asset purchase, including the following:

  a. MOCJ terminated the employment of all its employees. Alliant hired some, but not all, of the former MOCJ employees after the asset acquisition.

  b. MOCJ's operations were handled by a six-person Executive Committee and by the Board of Directors who had ultimate authority and decision making. In contrast, Alliant's Spokane branch is run by two people who report to an Alliant employee in Alliant's New York office. That New York employee reports to Alliant's California corporate office.

  c. MOCJ handled its accounting internally with its own accounting employees. In contrast, Alliant moved the accounting operation from its Spokane branch to its San Diego, California office. MOCJ accounting employees were not hired by Alliant. All checks are

issued by the San Diego office, and all payments are sent to the San Diego office. All expense reports are submitted to Alliant's California accounting office for approval and payment.

d. Alliant's San Diego office handles human resources matters for the Spokane branch.

e. Alliant's corporate office handles all insurance, 401(k) retirement programs, and other employee benefit programs for its Spokane office.

f. Alliant's corporate information technology ("IT") department handles all IT and phone issues for its Spokane branch.

g. Alliant's Spokane branch provides customer service for Alliant's New York branch.

h. Alliant closed MOCJ's Coeur d'Alene, Idaho office.

i. Alliant's California office handles all licensing for its Spokane branch.

**Dec. of Cox, ¶17.**

16. Alliant informed its clients and the public of the purchase of the MOCJ assets by issuing a Press Release regarding the MOCJ asset acquisition to numerous news outlets, including the Spokesman-Review and the Spokane

Journal of Business. This included touting that the office was now part of Alliant. **Dec. of Cox, ¶18 and Exs. B and C.**

17. Alliant's Spokane branch operates under several trade names: "moloney + o'neill An Alliant Americas Company," "Alliant Americas," and "moloney + o'neill a division of Alliant Insurance Services, Inc." **Dec. of Cox, ¶21 and Exhibit D**.

18. Cox was an employee, Shareholder, Board of Directors member, Corporate Secretary, and legal counsel of MOCJ prior to September 1, 2014. After September 1, 2014, his sole position with Alliant was as an employee pursuant to the Employment Agreement. **Dec. of Cox, ¶23.**

19. The last sentence of Paragraph 4 of the Declaration of Daniel Romain is incorrect: Cox was not "legal counsel" for Alliant at any time before or after the asset acquisition. **Dec. of Cox, ¶ 24.**

20. Cox was employed by Dunn & Black as an attorney from 2003 to 2006. **Dec. of Cox, ¶25.**

21. Kevin Roberts provided legal services to MOCJ and Cox for a short period of time during the negotiations between Alliant and MOCJ on issues that were directly adversarial to Alliant and which did not relate to the Employment Agreement at issue. Indeed, the seperation agreements for one of the specific employees referenced in the billing records were never used by MOCJ as those

employees accepted employment with Alliant. Kevin Roberts has never had any confidential information of Alliant, did not draft the Alliant Employment Agreement, and did not represent MOCJ in actions adversarial to Cox. **Dec. of Cox, ¶26.**

## III. LAW AND ARGUMENT

Because of the potential for abuse, motions to disqualify opposing counsel should be subjected to strict judicial scrutiny. Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985) (citations omitted). Because a motion to disqualify may be tactically motivated, causes delay and additional expense, and disrupts attorney-client relationships, the moving party must meet a high standard of proof to disqualify the movant's alleged former attorney. *See* Gov't of India v. Cook Ind., Inc., 569 F.2d 737, 739 (2d Cir.1978); The District Court has the discretion to award attorneys fees and costs to the non-moving party when a motion to disqualify is brought in bad faith and solely for tactical reasons. Optyl, 760 F.2d at 1048.

**A. Alliant Is Not Roberts' Former Client and No Conflict of Interest Exists.**

> *A lawyer who has formerly represented a <u>client</u> in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client....*

RPC 1.9 (emphasis added).

PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO
DISQUALIFY- 10

It is undisputed that Alliant is not a former client of Roberts. As such, Roberts is not barred from representing Plaintiffs in this action.

In an attempt to justify their litigation tactic, Local Counsel makes the misrepresentation to the Court that Roberts drafted the employment agreement at issue. **ECF 11.** As explained above, this is patently false. Roberts briefly represented MOCJ from May 28, 2014 through July 9, 2014 on specific issues related to its adversarial negotiations with Alliant. **ECF 12, pgs. 16-17.** During that same time, Roberts also provided Cox with individual advice on the proposed Employment Agreement Alliant drafted that would apply to Cox if he accepted employment following the purchase of MOCJ assets. **ECF 27, pgs. 3-4.** At no time did Roberts have access to any confidential information of Alliant relative to Alliant's drafting of the proposed Employment Agreement or which would in any way be confidential in this litigation. **Dec. of Roberts ¶8.**

In addition, Alliant's argument ignores the fact that this was a partial asset purchase. Alliant did not purchase or merge with MOCJ. Indeed, MOCJ continued as a separate corporation for more than one year after that acquisition. Roberts never performed legal services for Alliant, and MOCJ is not a party to this action. Roberts never received any confidential information from Alliant and Cox was Roberts' exclusive contact at MOCJ. **Dec. of Roberts, ¶7.**

PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO
DISQUALIFY- 11

Even if this were more than a partial asset purchase, when determining whether the acquiring entity has the status of a former client, the general rule is that if the successor is a different corporation it does not have the status of a former client. *See* e.g. *citing* Millar Elevator Industries, Inc. v. 421 Port Associates, 228 A.D.2d 272, 644 N.Y.S.2d 33 (1st Dep't 1996). A review of the Sale Agreement and the record before the Court confirms that MOCJ and Alliant are separate, distinct corporations. MOCJ remains a separate corporation with separate assets to this day. MOCJ and Alliant have separate officers and a separate Board of Directors. In fact, Plaintiff Cox is still the Corporate Secretary for MOCJ. **Dec. of Cox, ¶14.** Alliant has no control whatsoever over MOCJ. Alliant, a large, Delaware corporation, operates its Spokane branch substantially different manner than MOCJ operated it prior to the asset acquisition. Alliant is not a former client of Roberts, the brief representation by Roberts was adversarial to Alliant, and the drastic measure of disqualification is not proper or warranted.

The difference of the particular facts and circumstances of the cases cited by Defendants and the facts at bar confirm that disqualification is not proper in this case and it is being pursued in bad faith. See Tekni-Plex, Inc. v. Meyner and Landis, 674 N.E.2d 663 (N.Y. 1996) and USI Ins. Servs., LLC v. Ryan, 2014 WL 3054278 at 4 (N.D. Ind. July 7, 2014.) Tekni-Plex is an out of circuit case that is easily distinguishable and does not support Local Counsel's argument that Alliant

is Roberts' former client. **ECF 11.** In Tekni-Plex, the acquiring successor corporation "was a shell corporation created by the purchasers solely for the acquisition of Tekni-Plex." Id. at 665. In contrast, Alliant Insurance Services, Inc. was founded in 1925 and is one of the nation's largest insurance brokerage firms. MOCJ and Alliant remained two separate, distinct entities that negotiated as adversaries during Roberts' brief, limited representation of MOCJ. Consequently, Tekni-Plex does not apply.

Defendants also mistakenly rely on USI Insurance Services, LLC v. Ryan, an unreported opinion from Indiana that involves facts very different from the issues at bar. In USI, USI based its argument to disqualify solely on two facts, neither of which are present in this action:

> ***USI asserts that B & M should be disqualified under Rule 1.9(a) from representing Ryan in this matter because: (1) B & M wrote Ryan's Employment Agreement for USI's predecessor, OAM, and (2) represented another predecessor, Wells Fargo, in a similar dispute against DeHayes and another departing employee.***

Ryan, 2014 WL 3054278, p. 3.

Neither of those facts are present in this action. First, Roberts did not draft an employment agreement between MOCJ and Cox. Nor did he draft the employment agreement between Alliant and Cox. It was Alliant, using their own counsel prior to the partial asset sale that drafted the Employment Agreement at

PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO
DISQUALIFY- 13

issue, not Roberts. **Dec. of Roberts, ¶6.** Likewise, Roberts never represented Alliant or MOCJ in a similar dispute. In <u>USI</u>, the law firm at issue had represented the acquired entity and its predecessors "for almost a century" on "a variety of legal matters...." <u>USI</u> at Page 3. In this action, Roberts represented MOCJ for less than two months and exclusively on issues relating to the adversarial negotiations with Alliant. **Dec. of Roberts, ¶7.** The unreported opinion in USI is based on entirely different facts that are not present in this action and does not support Defendants' attempt to disqualify Roberts. It is easy to see the conflict in <u>USI</u> that does not even remotely exist in this case.

**B. This Litigation Is Not Substantially Related to Roberts' Representation of MOCJ In Its Adversarial Negotiations with Alliant.**

A lawyer is only barred from representing a former client "*in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client....*" Matters are "*substantially related*" if there is a substantial risk that confidential factual information gained in the prior representation can be used against the former client in the subsequent matter. *See* <u>Trone v. Smith</u>, 621 F.2d 994, 999 (9th Cir. 1980). The current litigation is not substantially related to the limited work Roberts performed for MOCJ, and thus this rule does not apply. Indeed, Local Counsel fails to identify any confidential information that was obtained by Roberts on behalf of Alliant that could possibly be used in this action.

PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO
DISQUALIFY- 14

During the course of its negotiations with Alliant, Cox contacted attorney Roberts to draft Separation Agreements for MOCJ shareholders who intended to retire from MOCJ rather than accept future employment with Alliant. **Dec. of Cox, ¶4.** Cox also asked Roberts to determine MOCJ's potential liability for wrongful termination of MOCJ employees that Alliant refused to hire if and when the Alliant partial asset purchase was finalized. Neither of these assignments are substantially related to the wrongful termination of Cox and Anti-Trust violations that are the subject of this litigation.

Matters are "substantially related" if there is a substantial risk that confidential factual information gained in the prior representation can be used against the former client in the subsequent matter. *See* Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980). There is no substantial risk that Roberts gained confidential factual information from Alliant that can be used against them in this litigation. Roberts never represented Alliant, never spoke to or worked with any Alliant representatives, and never received any confidential information from Alliant. His services were provided solely to MOCJ months before the Alliant asset acquisition. Defendants did not and cannot identify and specific confidential information that Roberts allegedly gained in his representation of MOCJ, and this action is therefore not substantially related to Roberts' prior representation of MOCJ.

Furthermore, the only confidential information obtained relative to the Alliant Employment Agreement consists of Roberts communications with Cox to provide Cox with personal advice on the Employment Agreement that Alliant was proposing. It is illogical for Alliant to claim it should have access to the attorney privileged information between Cox and Roberts or that it would be a basis to prevent Cox from having the Counsel of his choice.

### C. Defendants Fail To Address the Prejudice to Plaintiffs Pacific Coast and Mayo.

Defendants' Motion seeks to disqualify Robert from the matter entirely. This ignores the fact that there are other Plaintiff and Defendants whose claims are not based on Cox's Employment Agreement. Even if Defendants' misrepresentations were accepted, there would be no basis to deprive Pacific Coast and Mayo of their Counsel.

### IV. CONCLUSION

Cox respectfully requests that the Court see this Motion for what it is, a tactical smoke screen intended to distract from Local Counsel's conflict and intended to advance the personal agenda of Robert Dunn. Consequently, the motion should be denied and Cox awarded the fees and costs incurred.

/ / / / /

DATED this 22nd day of November, 2016.

                        ROBERTS | FREEBOURN, PLLC

                        /s/ KEVIN W. ROBERTS
                        KEVIN W. ROBERTS
                        Kevin W. Roberts, WSBA #29473
                        Chad Freebourn, WSBA #35624
                        Attorneys for Plaintiff
                        313 W. Riverside Ave.
                        Spokane, WA 99201
                        Telephone: (509) 381-5262
                        Fax: (509) 473-9026
                        Email: kevin@robertsfreebourn.com
                                      chad@robertsfreebourn.com

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of November, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send notification of such filings to the following:

Robert A. Dunn
bdunn@dunnandblack.com

Richard Wetmore
rwetmore@dunnandblack.com

Alexandria T. Drake
adrake@dunnandblack.com

Scott A. Meyers
Scott.meyers@akerman.com

Kasey F. Dunlap
Kasey.dunlap@akerman.com

Julian Dayal
Julian.dayal@akerman

ROBERTS | FREEBOURN, PLLC

/s/ CHAD FREEBOURN
Chad Freebourn, WSBA #35624
Kevin W. Roberts, WSBA #29473
Attorneys for Plaintiff
313 W. Riverside Ave.
Spokane, WA 99201
Telephone: (509) 381-5262
Fax: (509) 473-9026
Email: kevin@robertsfreebourn.com
chad@robertsfreebourn.com

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY- 18